KATHERINE MONTGOMERY PRICE, )
                                  )
     Plaintiff/Appellant, )    Appeal No.
                                  )    01-A-01-9505-GS-00208
v.                            )
                                  )    Wilson General Sessions
THOMAS BRADLEY PRICE, )    No.   4153
                                  )
     Defendant/Appellee. )

**FILED**

Nov. 15, 1995

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE

APPEAL FROM THE GENERAL SESSIONS COURT FOR

WILSON COUNTY

AT LEBANON, TENNESSEE

THE HONORABLE ROBERT HAMILTON, JUDGE

PHILLIP L. DAVIDSON
2400 Crestmoor Road
Nashville, Tennessee  37215
     ATTORNEY FOR PLAINTIFF/APPELLANT


CAROL SOLOMAN
Washington Square, Suite 400
214 Second Avenue North
Nashville, Tennessee  37201

MARTHA C. WHERRY
Washington Square, Suite 326
222 Second Avenue North
Nashville, Tennessee  37201
     ATTORNEYS FOR DEFENDANT/APPELLEE

AFFIRMED AND REMANDED

SAMUEL L. LEWIS, JUDGE

# MEMORANDUM OPINION[1]

The sole issue presented by the appellant is: "Did the trial court err by awarding custody of the appellant's minor child to a third party?"

The appellant has two sub-issues: "The rights of a natural parent are always supreme to that of third parties unless the parent is declared unfit," and "The trial court did not consider the child's present condition in determining its award of custody."

At the plaintiff's request, the trial court filed a finding of fact, pertinent portions of which are as follows:

> Mother testified under oath that she had not done drugs in years. Mother testified that she participated in a group called White Eagle School, which is devoted to the study and preservation of Native American culture. Mother testified that she did not have a boyfriend named Rich Smith and that Smith had spent one night with her but had slept in a separate room. At the close of the hearing the Court awarded temporary custody to Mother and ordered her to move into her parents' residence within ten (10) days. The court instructed Mother to have the minor child to school on time each and every day. The Court ordered both parties to have a drug test on the day of the hearing.
> In the trial some three (3) months later, it was learned the Mother had failed to take the drug test on the date of the initial hearing, May 11, 1994, as ordered and had taken it at the conclusion of the following day at 4:30 p.m. Father obtained his test on the day ordered. School attendance records showed, despite the Court's warning, the child was late for school five (5) times out of ten (10) days.
> A witness, Rich Smith, testified he had slept with Mother many times at her home with the child in the house. He also testified to regular drug use by Mother and himself. The Court found this witness credible. The witness said the Mother had appeared at his apartment in a rage when she found out that he had been subpoenaed. She then followed him to his Grandmother's house and caused a

[1]
Court of Appeals Rule 10(b):
    The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

disturbance. She told him his testimony was going to be "his word against hers." The Court finds the Mother not truthful about her relationship with Mr. Smith and that Mother was not truthful about her lack of drug usage, both of which occurred when the child resided in the home.

Trial on the merits was held approximately three (3) months later.

Jody Solen, a neighbor of the parties, testified the Mother had disclosed to her a sexual affair with a seventeen (17) year old or eighteen (18) year old, although this testimony is uncorroborated. Solen also testified that she had seen Mother and Father use drugs and Father use alcohol. Solen testified that Father was away working in North Carolina in Summer of 1993. While Husband was gone, there would be numerous cars come and go both day and night, all visitors were men. When Husband returned home all traffic stopped until he left again in February, 1994, and all traffic resumed, three (3) to five (5) cars per day. Solen testified that she did not see any women. Solen testified that sometimes the cars stayed overnight.

The Mother has admitted committing perjury concerning her participation in a pornographic video. Mother only admitted her participation after being made aware of its existence in open court. This Court finds that Mother is not a credible witness.

Father showed a video at trial of the condition of the marital home while under Mother's absolute care. The Court finds this video was not "set up". The Court further observed what appeared to be drug paraphernalia and marijuana seeds. The Court finds the video depicted unsuitable living conditions. The Court finds it would be uncomfortable allowing anyone, let alone a child, live in the utter filth. The Mother offered a video after the home was clean. The video was prepared after the Mother was made aware of the Father's video.

Rich Smith, being subpoenaed by the Husband, testified to having had sexual relations with Mother in the marital home while the child was present and to having used marijuana with Mother.

Mother testified about the good environment at her parents' home where the child was temporarily living. The Court found that both Grandparents were responsible, loving and acceptable, that the Husband's parents had spent more time with the grandson, both at their home as well as taking him on many vacations.

Elaine Humble, the minor child's first grade teacher, testified that Mother participated in parent-teacher activities and led a class field trip to Long Hunter State Park. Humble testified that she had never seen or met Father. She also testified that the child had been consistently tardy, although it had not affected his schoolwork.

The Court finds both parents have done a poor job of setting an example for the minor child and it is in the best interest of the minor child to be in the custody of one of the sets of Grandparents, either paternal or maternal. The Court specific-

3

> ally finds that Mother is, at this time, unfit.
> The Court is concerned about stability for the child and finds the child's grades reflect this problem with the drop in averages. The Court finds the paternal Grandparents offer more stability for the child. Although the paternal Grandfather had a D.U.I. conviction years ago, this appears to not be a chronic problem. The paternal Grandfather works form his home and will always be available for this child as he has been in the past.

The record fully supports the trial court's finding that the Mother, at the time of trial, was not a fit parent and that it was in the best interest of the child that custody be placed with the paternal grandparents.

"The trial court is authorized to commit custody to a non-parent when the trial court has found the parents to be unfit." *Sudberry v. Sudberry*, No. 01-A-01-9411-CV00510, 1995 WL 138892, at *3 (Tenn. Ct. App. March 31, 1995).

The trial court in this case had the opportunity to observe the plaintiff at four separate hearings in May, August, October, and December 1994. During this time, the trial court saw her go from one job in May to another job in August, she was fired for tardiness from one job and then going to a fourth job in 1994. She was accused of stealing state property, a telescope, she also removed from the residence, mirrors, gas logs, and ceiling fan after foreclosure was commenced. The trial court found that the plaintiff was irresponsible and the record fully supports this finding.

The trial court specifically ordered the plaintiff not to allow the minor child to be late for the last ten days of school, but nevertheless, she allowed him to be late five out of ten days. During the time the child was with plaintiff he went from the honor roll to C's and D's.

4

The record shows that the mother was untruthful in her testimony on numerous occasions. At the May 10, 1994 hearing she stated that it had been years since she had "any kind of drug use." At the hearing in August, plaintiff stated it was April, one month before the May 11 hearing. She explained her discrepancy by answering that she only was commenting on "serious drugs."

She admitted to committing perjury and about having sex with men and being videotaped, after having first denied it.

She testified that she had not been fired from a job between the May and August hearing because of chronic tardiness. When someone from her previous employment contradicted this she then admitted that she had been fired.

She testified that her latest boyfriend, Rick Smith, had spent the night only once and at that time he slept in the bonus room but not with her, and not where the child was present. She also testified she did not do drugs with him. Richard Smith, whom the court found to be credible, testified that he had slept with the appellant with the child present in the house and that he also had done drugs with the Wife when the child was present.

The Tennessee Park Authorities recovered from the plaintiff's house, a telescope she had "borrowed" when she worked for the state some ten months prior.

In this case, the plaintiff admitted to more than one occasion of making outright, untruthful statements.

In this non-jury case, we review the findings of fact de novo upon the record of the trial court accompanied by a presumption of the correctness of the finding unless a

preponderance of the evidence is otherwise.  Tenn. R. App. P. 13(d).

Further, where issues in a case turn upon the truthless of witnesses, the trial judge, as the trier of fact in a non-jury case, has the opportunity to observe witnesses and their manner and demeanor while testifying and is in a far better position than the appellate court to decide those issues.  The weight, faith, and credit to be given any witnesses' testimony lies in the first interest with the trier of fact and the credibility according will be given great weight by the court of appeals.  *Leak v. V. Powell*, 884 S.W.2d 118, 120 (Tenn. App. 1994).

It results that the judgment of the trial court is in all things affirmed, and the cause is remanded to the trial court for any further necessary proceedings.  Costs on appeal are taxed to the plaintiff/appellant and her sureties.

_____
SAMUEL L. LEWIS, JUDGE

CONCUR:

_____
BEN H. CANTRELL, JUDGE

_____
WILLIAM C. KOCH, JR., JUDGE